Filed 7/31/26  Morrow v. Morgan CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| CRISTIN MORROW,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>THERON MORGAN,<br><br>    Defendant and Respondent. | F090864<br><br>(Super. Ct. No. 25DV0128)<br><br>**OPINION** |

### THE COURT\*

APPEAL from an order of the Superior Court of Kings County.  Kendra Weber, Judge.

Cristin Morrow, in propria persona, for Plaintiff and Appellant.

Theron Morgan, in propria persona, for Defendant and Respondent.

-ooOoo-

---

\*    Before Levy, Acting P. J., Snauffer, J. and DeSantos, J.

Cristin Morrow obtained a six-month domestic violence restraining order (DVRO) against her ex-boyfriend Theron Morgan in July 2025, in the Kings County Superior Court.  Morrow subsequently sought to renew the DVRO in November 2025.  After a hearing in December 2025, the trial court denied Morrow's request to renew the DVRO.  Morrow appealed.  Morrow argues the court did not apply the correct legal standard in evaluating her request for renewal of the DVRO.  We disagree and affirm the denial of renewal of the DVRO.

**FACTUAL AND PROCEDURAL BACKGROUND**

**Trial Court Entered Six-Month DVRO in July 2025**

Morrow and Morgan were in a romantic relationship for three years, from February 2021 to February 2024.

In May 2025, Morrow filed a request for a DVRO.  After hearings on June 27, and July 16, 2025, the trial court entered, on July 17, 2025, a six-month DVRO in favor of Morrow and her minor son, and against Morgan.  The DVRO had personal conduct, no-contact, and stay-away provisions.  The DVRO was set to expire on January 16, 2026.

**Morrow's Filed Request to Renew the Six-Month DVRO in November 2025**

On November 7, 2025, Morrow filed a request to renew the restraining order.  On the request form, Morrow indicated she wanted the restraining order renewed for five years; however, in a statement attached to the request form, she asked the court to "extend the restraining order for a period of one year."

Morrow noted in the request:  "I am not seeking to relitigate prior proceedings.  I am presenting factual updates to demonstrate why my fear remains ongoing and why continued protection is necessary."  She added:  "Since the [prior] ruling, [Morgan's] behavior has continued to show hostility, fixation, and disregard for the [c]ourt's order, particularly through social media activity that appears designed to taunt and intimidate

2.

indirectly." She further stated that Morgan's "continuing hostility and disregard for boundaries" since the issuance of the DVRO had "intensified" her distress.

Morrow explained that "[i]n the months following the restraining order," she had received a number of text messages from "unknown [phone] numbers," but noted she "cannot confirm" these messages were sent by Morgan. She added: "I also received a targeted prank call from a group of women who addressed me by name." She continued: "I have not received calls of this nature since grade school, making these incidents highly suspicious and indicative of continued harassment." She concluded: "Six months of protection has not been sufficient to demonstrate that [Morgan] has stopped his behavior."

**Morgan's Response to Morrow's Request for DVRO Renewal**

On December 1, 2025, Morgan filed a response to Morrow's DVRO renewal request, attaching a declaration. Morgan opposed Morrow's renewal request.

In the declaration attached to his response, Morgan attested that he had "not contacted [Morrow] in any way since February 2024," that is, well before the issuance of the DVRO. More specifically, he declared: "I have fully complied with the existing order, have not contacted [Morrow] in any way since February 2024, and have not engaged in any actions that could be interpreted as harassment, intimidation, or indirect communication."

Morgan further attested that he had "only posted two things involving [Morrow]" in the "four years" since he met her: "[a] 2021 birthday Instagram story" and "[a] December 27, 2023 photo of us ice skating." He added: "Nothing I have ever posted is intimidating, threatening, or directed at [Morrow]." He further averred: "[Morrow] has been blocked on all of my Instagram accounts since February 2024. Blocking someone also blocks any new accounts they create."

**Trial Court Held Hearing on Morrow's DVRO Renewal Request in December 2025**

The trial court held a hearing on Morrow's DVRO renewal request on December 8, 2025. Both parties were present and both were self-represented. After the court confirmed it had reviewed both parties' pleadings, Morrow testified on her own behalf and Mogan testified on his own behalf. Neither party called any other witnesses.

*Morrow's Testimony*

Morrow testified that she had "received several anonymous texts over the last few months including a phone call from a group of women." She added: "[T]hey are from unknown numbers or just random numbers and so I can't confirm who they are. But I fear that it's coming from somebody in [Morgan's social] circle."[1] Morrow said she received the random texts in July and August 2025, around the time the trial court entered the DVRO on July 17, 2025, and she received the prank phone call from the group of women in September 2025. Regarding the phone call, Morrow observed the women were "giggling" and had told her, " 'your hamster [is] ready at PetCo.' " Morrow acknowledged, on cross-examination, that she had an 18-year-old daughter, whom she initially suspected was connected to the prank phone call. However, Morrow did not believe the phone call was related to her daughter or her daughter's friends.

Morrow also testified that, *prior to the issuance* of the DVRO, Morgan had filed a complaint with Child Protective Services (CPS) about her and obtained a life insurance policy naming her minor son as the beneficiary; she described the latter act as "boundary violating behavior."[2] Morrow stated she was not aware of the life insurance policy until Morgan mentioned it in his December 1, 2025 response to her request for DVRO

---

[1] One text simply stated, "Hello." Another text stated, "Please text me." The third text stated: "I'm heading to San Diego, want to take a drive to Lake Jennings and do some fishing?"

[2] Morgan filed the CPS report in February 2025. Morgan obtained the life insurance policy in March 2025.

renewal. Morrow acknowledged, on cross-examination regarding the life insurance policy, that in the timeframe relevant to the policy, a prior partner of Morrow posed a credible threat to the safety of both Morrow and Morgan.

Morrow was asked on cross-examination whether Morgan had violated the restraining order. Morrow responded: "I don't know. Like I said. I have texts and calls that I reasonably fear could come from somebody in [Morgan's] circle based on the pattern." Morrow admitted she had no evidence as to who sent the text messages or made the phone call. She also admitted that she had not received any direct communication from Morgan since February 2024. Morrow also confirmed that, in the last six months, Morgan had not come by her house, place of work, her son's school, or any place associated with her. Finally, Morrow confirmed that she had no evidence Morgan had posted anything on social media that mentioned her or was related to her.

With regard to her request for renewal of the DVRO against Morgan, Morrow concluded: "[O]ur relationship ended almost 2 years ago and we're still here, [so] I think that it's reasonable to ask [to extend the DVRO] for a considerable amount of time, whatever [the court] deem[s] necessary. I'm not requesting a specific amount [of time,] I just want additional protection for the time being."

***Morgan's Testimony***

Morgan testified: "[S]ince the restraining order got issued I've not made a single form of contact. Everybody in my camp[,] the people I hangout [*sic*] with[,] not a single person has made any form of contact. [I have n]ot posted a single thing on social media about [Morrow]. I have not posted a single thing on social media about [Morrow] in any general way, harassing way or threatening way. I have not violated the restraining order." He added: "I grew up in this area [that is, Hanford]. My business was based in this area. [Morrow] had only ever been to Hanford one time with me. She had lived in San Diego and previously lived in Bakersfield. A lot of that got established during the

5.

original hearing.  But [Morrow] moved to Hanford [in August 2024] in pursuit of a relationship with me."**3**

Morgan further testified:  "[Morrow] is completely blocked [from my social media accounts] and whenever you block somebody from social media you can block any other accounts associated with that person.  Not only [blocked] from my personal account but also from my business account.  She is completely blocked and that has never changed.  Since February … 2024."  Morgan added:  "I have not sent [Morrow] any form of communication.  I asked her please not to contact me ever again.  Don't contact me via her son or anybody else since February 24[, ]2024.  Since then I've received over 30 emails.  I've received cell requests.  I've received phone calls from blocked numbers.  I've received social media posts that my attorneys were collecting of her that were threatening.  I've had ex-boyfriends reach [out] to me in threatening and alarming ways and I was the original one who was requesting the restraining order to be placed on her."

Morgan explained that *in addition to blocking* Morrow from his social media accounts, he also keeps his accounts private.  He said he made his accounts public for *two days* in connection with a preplanned media campaign for his business that occurred when the DVRO was issued, but thereafter, he again made his accounts private.

Morgan further testified:  "I've done everything I possibly can to create a barrier between [Morrow] and myself.  I moved back to the [C]entral [V]alley.  [She has] no idea where I live.  There's no trace of … any correspondence."

Morgan noted:  "[M]orrow has the most wonderful son on the planet and I had a very special relationship with him."  Morgan testified that Morrow's son did not have a father and, at one point in time, Morgan was concerned that a prior partner of Morrow would hurt either Morrow or Morgan.  Morgan further stated:  "And my only thought was

---

**3**	Morrow conceded on cross-examination that while she moved to Hanford in August 2024, Morgan had not seen her or corresponded with her since February 2024.

it's easy for me to be able to get a life insurance policy out of fear that [Morrow's son was] not going to have anybody [to take care of him]." Morgan continued: "That was purely something for myself and myself only as I was deeply concerned that I was going to get physically harmed in this process." Morgan said the only reason he included information about this insurance policy in his response to Morrow's DVRO renewal request was to show he was genuinely afraid for his safety during that period.

Morgan concluded: "I just want for [Morrow] to move on. I want for [Morrow] to be safe and live a healthy life. I want [Morrow's] son to be safe and live a healthy life. I tried to keep to myself and mind my own business and to not be harassed or reached out to. [¶] And so in conclusion, I've completely complied with this restraining order. I have not contacted [Morrow]. [I h]ave not harassed or threatened [Morrow] ever."

**The Trial Court's Ruling Denying Morrow's Renewal Request**

The trial court ruled from the bench after the parties had concluded their respective testimony. The court denied Morrow's DVRO request.

The trial court stated: "Okay. The prior [c]ourt did hear all of the previous evidence that resulted in the issuance of the current orders, made a determination that [six] months would be an appropriate timeframe. Although it does appear that [Morrow] is still under some distress from the previous events I'm just not seeing anything that has occurred. *It's not required there be any further abuse to grant a renewal*, however, it does appear that it is the same distress from the initial proceedings. And there does not appear to be grounds to extend the order. I'm going to deny the request to renew." (Italics added.)

The trial court added: "However, obviously if there are any new contacts [just so Morrow] is clear, [or] communication[ is] unwanted[,] then if any [DVRO] request were to be filed based on any type of conduct in the future then that would obviously create a

new scenario.  Okay.  At this time the request to renew is being denied.  Okay.  Thank you both.  [The DVRO] is still going to last until the current expiration date."

Morrow appealed.

## DISCUSSION

**I.     Morrow Has Not Shown the Trial Court Applied an Incorrect Legal Standard in Evaluating Her Request for Renewal of the DVRO**

As discussed further below, Morrow contends the trial court misapplied the governing legal standard by (1) "limit[ing] its inquiry to post-order conduct and den[ying] renewal on the ground that no new events had occurred"; (2) "effectively requir[ing] proof of new misconduct despite acknowledging that such proof is not required"; and (3) not properly considering, as required, whether Morrow had a reasonable apprehension of future abuse.  We are not persuaded.

### A. Standard of Review

"We generally review an order denying a request to renew a DVRO for abuse of discretion."  (*Michael M. v. Robin J.* (2023) 92 Cal.App.5th 170, 178 (*Michael M.*).)  "But the question whether the trial court applied the correct legal standard in exercising its discretion is a question of law requiring de novo review."  (*Id*. at p. 179.)  "If the court's decision to deny a renewal request is influenced by an erroneous understanding of the law, the court has not properly exercised its discretion under the law."  (*Ibid*.)

### B. Applicable Legal Framework

The stated purpose of the Domestic Violence Prevention Act (DVPA) (Fam. Code, §§ 6200–6460),[4] is to "prevent acts of domestic violence, abuse, and sexual abuse and to provide for a separation of the persons involved in the domestic violence for a period sufficient to enable these persons to seek a resolution of the causes of the violence."  (§ 6220.)

---

**4**     Subsequent, undesignated statutory references are to the Family Code.

8.

As relevant here, the DVPA defines domestic violence as "abuse" perpetrated against "[a] person with whom the respondent is having or has had a dating or engagement relationship." (§ 6211, subd. (c).) The DVPA authorizes courts to issue restraining orders based on "reasonable proof of a past act or acts of abuse." (§ 6300, subd. (a).)

The DVPA defines the term "abuse" broadly. The definition includes causing or attempting to cause bodily injury; sexual assault; and placing a person in "reasonable apprehension of imminent serious bodily injury to that person or to another." (§ 6203, subd. (a)(1)–(a)(3).) The definition also includes "any behavior that has been or could be enjoined pursuant to [s]ection 6320." (§ 6203, subd. (a)(4).) Section 6320 in turn authorizes courts to enjoin conduct including "molesting, attacking, striking, stalking, threatening, sexually assaulting, battering … harassing, telephoning, including, but not limited to, making annoying telephone calls … destroying personal property, contacting, either directly or indirectly," or "disturbing the peace of the other party." (§ 6320, subd. (a).) In addition, " 'disturbing the peace' " is defined as conduct that "destroys the mental or emotional calm of the other party." (§ 6320, subd. (c).) Thus, under the DVPA, courts may enjoin conduct that destroys a person's calm and tranquility. (See, e.g., *In re Marriage of Nadkarni* (2009) 173 Cal.App.4th 1483, 1498 ["former husband's alleged conduct in destroying the mental or emotional calm of his former wife by accessing, reading and publicly disclosing her confidential e-mails" would constitute abuse within the meaning of DVPA].) In short, the definition of abuse encompasses a wide range of conduct and is "not limited to the actual infliction of physical injury or assault." (§ 6203, subd. (b).)

When a trial court has issued a DVRO after notice and hearing, it has broad authority to renew the DVRO. A DVRO may be renewed "without a showing of further

9.

abuse since the issuance of the original order." (§ 6345, subd. (a).)[5] Imminent danger of abuse is not required either. (*Michael M.*, *supra*, 92 Cal.App.5th at p. 179.) All that is required is "a reasonable apprehension that 'abuse will occur at some time in the future if the protective order is allowed to expire.' " (*Ibid.*; *Perez v. Torrez-Hernandez* (2016) 1 Cal.App.5th 389, 397 [" 'A trial court should renew the protective order, if, and only if, it finds by a preponderance of the evidence that the protected party entertains a "reasonable apprehension" of future abuse.' "].)

In evaluating whether there is a reasonable apprehension of future abuse, and a DVRO may properly be renewed, the trial court "ordinarily should consider the evidence and findings on which the initial DVRO was based." (*Michael M.*, *supra*, 92 Cal.App.5th at p. 180.) Indeed, the evidence and findings on which the original DVRO was based " 'often will be enough in themselves to provide the necessary proof' " to justify renewal of the DVRO. (*Id.* at p. 180.) " '[S]ignificant changes in the circumstances surrounding the events justifying the initial protective order' " may also be relevant. (*Ibid.*) For example, courts may consider whether " 'the restrained and protected parties moved on with their lives so far that the opportunity and likelihood of future abuse has diminished to the degree they no longer support a renewal of the order.' " (*Ibid.*) " 'Also relevant are the seriousness and degree of risk, such as whether it involves potential physical abuse, and the burdens the protective order imposes on the restrained person, such as interference with job opportunities.' " (*Ibid.*)

However, "[a] DVRO renewal may not be denied solely on the ground that no additional abuse has occurred since the issuance of the original DVRO." (*Michael M.*,

---

[5]     Section 6345, subdivision (a) provides that a DVRO shall have an initial duration not exceeding five years, but "may be renewed, upon the request of a party, either for five or more years, or permanently, at the discretion of the court, without a showing of further abuse since the issuance of the original order…. The request for renewal may be brought at any time within the three months before expiration of the orders."

*supra*, 92 Cal.App.5th at p. 180.)  " 'The key consideration for the court is not the type or timing of abuse, but whether the protected party has a reasonable fear of future abuse.' " (*Ibid*.)

When a renewal of a DVRO is sought, "the restrained party is not permitted 'to challenge the truth of the evidence and findings underlying the initial order.' "  (*Lister v. Bowen* (2013) 215 Cal.App.4th 319, 333.)  Similarly, appellate courts are not permitted to review "issues that could have been raised in an appeal from the original restraining order."  (*Malatka v. Helm* (2010) 188 Cal.App.4th 1074, 1084.)

### C. Analysis

Morrow's overarching argument is that, in evaluating her request for renewal of the six-month DVRO, the trial court misapplied the governing legal standard by focusing on whether additional acts of abuse had occurred since the issuance of the original DVRO in July 2025, rather than properly considering whether Morrow had shown a reasonable apprehension of future abuse.

In her request for *renewal* of the DVRO, Morrow stated:  "I am not seeking to relitigate prior proceedings.  I am presenting *factual updates* to demonstrate why my fear remains ongoing and why continued protection is necessary.  [¶]  I remain fearful of [Morgan] because of his established history of harassment, retaliation, and manipulation. His conduct during and after the [DVRO] hearing revealed how far he is willing to go to distort reality, defame me, and maintain control.  *Since the [initial] ruling*, his behavior has continued to show hostility, fixation, and disregard for the [c]ourt's order, particularly through social media activity that appears designed to taunt and intimidate indirectly."  (Italics added.)  In addition, Morrow described the anonymous texts and phone call that she also received *after* the issuance of the DVRO.

*Notably*, Morrow's written DVRO renewal request did *not* refer to *any* specific findings made by the trial court, based on the evidence presented in the prior proceeding,

11.

in issuing the original DVRO. Indeed, Morrow's written DVRO renewal request did not even identify the grounds upon which the court had issued the original DVRO.[6]

At the beginning of the hearing on Morrow's renewal request, the trial court stated to Morrow: "So what you're going to do now is essentially testify as to what the facts are that you feel support your request for renewal." Morrow testified about the anonymous texts and prank phone call from giggling women she had received. She also testified about Morgan's acts that *predated* the issuance of the DVRO, such as a CPS complaint he had filed and a life insurance policy he had acquired that named her son as the beneficiary.

At various points in the proceedings *after* Morrow had completed the direct examination portion of her testimony, the trial court made statements such as, "[Morrow] is now seeking to extend [the DVRO] based on conduct that occurred after the order was issued. So let's keep it in the past [six] months, okay?" The court also told Morgan during his testimony that, "[we] [n]eed to keep it in the confines of what happened since the order's been issued." The court added, "we're not going to relitigate about [the] issues" already addressed in the prior proceeding. At the same time, the court noted the parties could address issues litigated in the prior proceeding to the extent "there's something [that] for some reason might be relevant." Indeed, the hearing encompassed evidence concerning events that occurred *both before and after* the issuance of the DVRO.

Morrow has not shown that she objected to the trial court's above-described statements on the basis she now asserts on appeal. Accordingly, she has forfeited her arguments on appeal. (See *In re Marriage of Binette* (2018) 24 Cal.App.5th 1119, 1130 ["[i]t is … a fundamental principle of appellate review that objections must be raised in

---

[6] The record of the original DVRO proceeding is *not* included in the record on appeal.

12.

the trial court to preserve questions for review"]; *Martorana v. Marlin & Saltzman* (2009) 175 Cal.App.4th 685, 700 [it is well established that "an appellate court ordinarily will not consider an alleged erroneous ruling where an objection could have been, but was not, raised before the trial court"]; *In re S.B.* (2004) 32 Cal.4th 1287, 1293 ["a reviewing court ordinarily will not consider a challenge to a ruling if an objection could have been but was not made in trial court"; "[t]he purpose of this rule is to encourage parties to bring errors to the attention of the trial court, so that they may be corrected"].)

Morrow's arguments are also unavailing on the merits. The trial court could reasonably have determined, based on the parties' written submissions, that their focus was on events that had occurred since the issuance of the original DVRO. As noted above, Morrow did not rely on findings made by the court in the prior proceeding; Morrow's written DVRO renewal request did not even identify the grounds upon which the court had issued the original DVRO. Furthermore, here the original DVRO was issued merely for six months, although a DVRO may be issued for an initial duration of *up to five years*. (§ 6345, subd. (a).) Moreover, *given the undisputed evidence that Morgan had not communicated at all with Morrow since February 24, 2024*, that is, almost a year and a half *before* the issuance of the DVRO, the court could reasonably have concluded that additional evidence beyond the issues addressed in the initial DVRO proceeding would be critical to the question of renewal here.

Indeed, not only was undisputed evidence presented that Morgan had not contacted Morrow since February 24, 2024, but the evidence also showed that he had blocked her from his social media accounts; he also kept his social media accounts private with limited exceptions for business reasons; he was making efforts to move on from his relationship with Morrow that had ended almost two years ago in February 2024; and he had not violated the DVRO.

13.

In making its ruling, the trial court observed: "Although it does appear [Morrow] is still under some distress from the previous events[,] I'm just not seeing anything that has occurred [to warrant renewal of the DVRO]." The court added: "*It's not required there be any further abuse to grant a renewal*, however, it does appear it is the same distress from the initial proceedings." (Italics added.) The court concluded: "And there does not appear to be grounds to extend the order. I'm going to deny the request to renew."

The trial court correctly and expressly stated: "It's not required [that] there be any further abuse to grant a renewal." Although some of the trial court's statements in its ruling are somewhat elliptical and unartfully phrased, it appears the court applied the correct standard and properly evaluated whether there was a reasonable basis for Morrow to be fearful of future abuse. The court's rationale for denial seems to have been that Morrow had not shown a reasonable apprehension of future abuse because she and Morgan were now living separate lives and likely had been for some time.

The record further indicates the trial court did not deny renewal of the DVRO based *solely* on the lack of additional occurrences of abuse since the issuance of the DVRO. Rather, it did so at least in part based on the evidence of long-standing, affirmative steps taken by Morgan to move on from his former relationship with Morrow. (See *In re Marriage of Martindale and Ochoa* (2018) 30 Cal.App.5th 54, 62 [affirming denial of renewal of three-year DVRO as trial court properly considered "evidence of affirmative efforts by respondent to avoid appellant"].)

Finally, Morrow has not shown prejudice from the alleged misapplication of the governing legal standard by the trial court.

For the foregoing reasons, we affirm the trial court's order denying Morrow's request for renewal of the DVRO.

14.

## **DISPOSITION**

The trial court's order denying renewal of the DVRO is affirmed.  Each party to bear their own costs on appeal.